UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHARLES SEIFE,                                       :

                        Plaintiff,          : OPINION AND ORDER
                                              11 Civ. 6646 (GWG)
        -v.-                                         :

NATIONAL INSTITUTES OF HEALTH, et al.,   :

                        Defendants.         :
-----------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

APPEARANCES:

Plaintiff Pro Se:
Charles Seife.
New York, NY

For defendants National Institutes of Health, et al.:
Alicia Marie Simmons
U.S. Attorney's Office
Southern District of New York
New York, NY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CHARLES SEIFE,                                     :

                  Plaintiff,        : <u>OPINION AND ORDER</u>
                             11 Civ. 6646 (GWG)
    -v.-                                          :

NATIONAL INSTITUTES OF HEALTH, et al.,  :

                Defendants.      :
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Pro se plaintiff Charles Seife has sued under the Freedom of Information Act, 5 U.S.C.

§ 552 ("FOIA"), to obtain records relating to certain individuals who serve on advisory panels of

the defendant National Institutes of Health ("NIH"). These individuals are considered "special

governmental employees" ("SGEs") of NIH. The parties have each moved for summary

judgment[1] and have consented to disposition of the case by a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c). For the reasons stated below, Seife's motion is granted in part

and denied in part, and the defendants' motion is granted in part and denied in part.

---

[1] See Plaintiff's Motion for Summary Judgment, filed Dec. 23, 2011 (Docket # 12);
Declaration of Charles Seife, filed Dec. 23, 2011 (Docket # 13) ("Seife Decl."); Statement of
Uncontested Facts Pursuant to Local Rule 56.1, filed Dec. 23, 2011 (Docket # 14) ("Seife 56.1
Statement"); Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment,
filed Dec. 25, 2011 (Docket # 15) ("Seife Mem."); Notice of Motion, filed Jan. 17, 2012 (Docket
# 20); Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in
Support of Defendants' Motion for Summary Judgment, filed Jan. 17, 2012 (Docket # 21)
("Gov. Mem."); Declaration of Susan R. Cornell, filed Jan. 17, 2012 (Docket # 22) ("Cornell
Decl."); Counter Statement Pursuant to Local Rule 56.1, filed Jan. 17, 2012 (Docket # 23)
("Gov. 56.1 Statement"); Reply and Memorandum of Law in Opposition to Defendants' Cross-
Motion for Summary Judgment, filed Jan. 27, 2012 (Docket # 24) ("Seife Reply"); Reply
Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, filed
Feb. 3, 2012 (Docket # 25) ("Gov. Reply"); Supplemental Memorandum of Law in Support of
Defendants' Motion for Summary Judgment, filed Apr. 24, 2012 (Docket # 31) ("Gov. Supp.
Mem."); Declaration of Lawrence Tabak, filed Apr. 24, 2012 (Docket # 32) ("Tabak Decl.");
Supplemental Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary
Judgment, filed May 1, 2012 (Docket # 33) ("Seife Supp. Mem.").

I.   BACKGROUND

A.   Seife's Request for Documents

On February 24, 2011, Seife requested documents from NIH pursuant to FOIA.  Seife

56.1 Statement ¶ 1; Gov. 56.1 Statement ¶ 1.  Among other documents, Seife requested copies of

the documents contained in the ethics files of 44 NIH SGEs that "relate[] to managing real

and/or apparent conflicts of interest."  Cornell Decl. ¶ 4; Letter from Charles Seife to FOIA

Officer, dated Feb. 24, 2011 (annexed as Ex. 1 to Complaint, filed Sept. 22, 2011 (Docket # 1)).

NIH ultimately produced records relating to SGEs who served on NIH advisory

committees.  See Vaughn Index (annexed as Ex. G to Cornell Decl.); Cornell Decl. ¶¶ 10, 11, 19,

20, 22, 28, 30.  NIH advisory committees "furnish[] expert advice, ideas, and diverse opinions to

[NIH]."  5 U.S.C. App'x 2 § 2(a).  The SGEs at issue in this case served on three types of

advisory committees: (1) Boards of Scientific Counselors, which "review and evaluate the

research programs and investigators in NIH's internal research laboratories;" (2) Program

Advisory Committees, which "provide advice on specific research programs and future research

needs and opportunities. . . . [and] identify and evaluate initiatives within NIH to support or fund

research projects conducted by researchers and organizations outside of NIH;" and (3) National

Advisory Councils and Boards, which "perform the second level of peer review for research

grant applications[,] . . . provide oversight on research programs executed [at NIH], and offer

advice and recommendations on policy and program development, program implementation,

evaluation and other matters of significance."  See Tabak Decl. ¶ 5.  NIH advisory committees

do not have the authority to make final decisions on behalf of NIH.  See id. ¶¶ 4, 6.

The documents at issue in this lawsuit consist of documents the parties call "recusal lists"

and "waiver determinations."  We next discuss each type of document.

B.     Recusal Lists

Section 107(a) of the Ethics in Government Act ("EGA"), 5 U.S.C. App'x 4, allows NIH to require its SGEs to complete a "confidential financial disclosure report[]," and NIH in fact requires such reports.  See Tabak Decl. ¶ 12.  An SGE makes the report on a United States Office of Government Ethics ("OGE") Form 450 and must provide an update prior to each advisory committee meeting.  Id.  The OGE Form 450 contains "a listing of information about all reported financial interests as well as business and personal interests that could potentially create a conflict of interest."  Id. ¶ 11.  Before each advisory committee meeting, an NIH committee staff member uses the Form 450 submitted by each SGE to generate lists of the financial interests and relationships of the SGEs that could potentially pose a conflict of interest with their work on the advisory committee.  Id. ¶ 13.  These documents are the "recusal lists." After a recusal list is generated, the staff member gives it to the Deputy Ethics Counselor of the particular institute at NIH that oversees the advisory committee on which the SGE serves.  Id. The recusal lists are ultimately given to the members of the advisory committee so that they are aware of the SGEs' potential conflicts of interest and can avoid such conflicts.  Id.

C.     Waiver Determinations

Notwithstanding a potential conflict of interest, 18 U.S.C. § 208(b)(3) allows an SGE to serve on an agency advisory committee if the agency, after reviewing the SGE's financial disclosure report, "certifies in writing that the need for the individual's services outweighs the potential for a conflict of interest created by the financial interest involved."  At NIH, committee management staff uses the Form 450 to determine whether an employee should be allowed to participate in matters of "general applicability" despite any conflict reflected in the Form 450. Tabak Decl. ¶ 15.  For NIH, matters of "general applicability" are those matters that affect a

group or class of entities similarly but do not uniquely affect any single entity that might be listed.  Id.  In other words, a waiver determination does not allow the employee to work on a matter regarding interests specific to an entity on the Form 450.  Id.  In instances where the staff member finds that a waiver is appropriate, a waiver determination form is prepared, which includes a listing of the employee's financial interests as found in the Form 450.  See id. ¶ 16. The Deputy Ethics Counselor of the particular NIH Institute involved reviews and signs the waiver determination.  Id. ¶ 17.

        D.      <u>Materials Released by NIH</u>

        NIH responded to Seife's request by eventually providing partially redacted recusal lists and waiver determinations.  See Cornell Decl. ¶¶ 22–25.  NIH redacted all information from the recusal lists and waiver determinations that had been obtained from the OGE Form 450.  See id. The redactions included all information relating to the employees' financial interests and personal or business relationships (which we sometimes refer to together as "financial information") that NIH had obtained from the OGE Form 450.  Id. ¶¶ 23–24.  The material redacted from the recusal lists and waiver determinations included the names of entities with which each employee had a financial interest, the nature of each interest, and, in some cases, labels (consisting of a single letter) indicating whether a financial interest belonged in whole or in part to a spouse or dependent child of the employee.  See id.  NIH also redacted from the recusal lists and waiver determinations any information identifying the employee's personal or business relationships – that is any relationships with any person or business for which the employee had, within the preceding year, served as an officer, director, trustee, general partner, agent, attorney, consultant, contractor, or employee.  Id.

II.    LAW GOVERNING FOIA ACTIONS

As we noted in Garcia v. United States Department of Justice, 181 F. Supp. 2d 356

(S.D.N.Y. 2002), FOIA's general purpose is to "ensure an informed citizenry which is needed to

check against corruption and hold the governors accountable to the governed," id. at 369

(quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)) (brackets and ellipsis

omitted); accord Nat'l Archives & Record Admin. v. Favish, 541 U.S. 157, 171 (2003)

(explaining that the purpose of FOIA is to allow the general public to learn "what their

Government is up to") (citation omitted); Associated Press v. U.S. Dep't of Defense, 554 F.3d

274, 283 (2d Cir. 2009) ("[FOIA] was designed to pierce the veil of administrative secrecy and

to open agency action to the light of public scrutiny.") (citation and internal quotation marks

omitted).  FOIA favors broad disclosure and "any member of the public is entitled to have access

to any record maintained by a federal agency, unless that record is exempt from disclosure under

one of the Act's nine exemptions."  A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 143 (2d Cir.),

cert. denied, 513 U.S. 1015 (1994); accord Bloomberg, L.P. v. Bd. of Governors of the Fed.

Reserve Sys., 601 F.3d 143, 147 (2d Cir. 2010), cert. denied, 131 S. Ct. 1674 (2011); Associated

Press, 553 F.3d at 283.  Federal courts are required to conduct a de novo review of an agency's

decision to withhold records requested under FOIA, Bloomberg, 601 F.3d at 147; Associated

Press, 554 F.3d at 283, and all statutory exemptions must be construed narrowly, Bloomberg,

601 F.3d at 147; Associated Press, 554 F.3d at 283.  Agency information falling within the terms

of a FOIA exemption, however, need not be disclosed.  See, e.g., Associated Press, 554 F.3d at

283–84; Halpern v. FBI, 181 F.3d 279, 287 (2d Cir. 1999).

To prevail on a motion for summary judgment in a FOIA action, the government has "the

burden of showing that . . . any withheld documents fall within an exemption to the FOIA."

5

Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir.), cert. denied, 513 U.S. 823 (1994);

accord U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755

(1989); Bloomberg, 601 F.3d at 147; Associated Press, 554 F.3d at 283.  Summary judgment

may be granted on the basis of affidavits or declarations "supplying facts . . . giving reasonably

detailed explanations why any withheld documents fall within an exemption."  Carney, 19 F.3d

at 812; accord Associated Press v. U.S. Dep't of Justice, 549 F.3d 62, 65 (2d Cir. 2008).

III.    DISCUSSION

At issue is NIH's withholding of two categories of information from the recusal lists and

the waiver determinations: (1) information relating to the financial interests and business and

personal relationships of the SGE, and (2) letter labels indicating whether a financial interest

belonged in whole or in part to an SGE's spouse or dependent child.  NIH relied on FOIA

Exemptions 3 and 6, 5 U.S.C. §§ 552(b)(3), (b)(6), to withhold both categories of information

from the recusal lists and to withhold the second category of information from the waiver

determinations.  See Gov. Mem. at 13–23; Gov. Reply at 3–9.  It relied on Exemption 6 alone to

withhold the first category of information from the waiver determinations.  See Gov. Mem. at

18–23; Gov. Reply at 3 n.2, 5–8.

We begin by discussing the applicability of Exemption 3 and then turn to the

applicability of Exemption 6.

A.    Exemption 3's Application to Information in the Recusal Lists Regarding the
      Employees' Personal Finances and Business and Personal Relationships

Exemption 3 permits an agency to withhold information from the public if another statute

specifically exempts that information from disclosure and that statute "requires that the matters

be withheld from the public in such a manner as to leave no discretion on the issue" or

"establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A).  NIH obtained the redacted financial information from the OGE Form 450.  See Cornell Decl. ¶ 31.  OGE issues Form 450 pursuant to the Ethics in Government Act ("EGA"), 5 U.S.C. App'x 4 § 107, and 5 C.F.R. § 2634.901.  See Confidential Financial Disclosure Report, dated Dec. 2011 (annexed as Ex. A to Seife Reply) ("Sample Form 450").  The EGA provides that "[a]ny information required to be provided by an individual under [EGA § 107(a)] shall be confidential and shall not be disclosed to the public."  5 U.S.C. App'x 4 § 107(a)(2); accord 5 C.F.R. § 2634.901(d) ("The reports filed pursuant to this subpart are specifically characterized as 'confidential,' and are required to be withheld from the public, pursuant to section 107(a) of the Act.").  EGA § 107(a)(2) thus leaves no discretion to agencies as to whether they may reveal the contents of the Form 450s.  Concepcion v. FBI, 606 F. Supp. 2d 14, 33 (D.D.C. 2009).  Accordingly, FOIA Exemption 3 allows non-disclosure of Form 450 to the public.  See id. at 33–34.

Seife acknowledges that NIH must withhold the OGE Form 450s from the public, see Seife Reply at 7, but argues that an agency must nevertheless disclose to the public other documents, such as recusal lists, that contain information the agency obtained from the Form 450s.

The Court rejects this argument.  The withheld material is unquestionably information that the individual was "required" to provide, see 5 U.S.C. § 552(b)(3)(A), when he or she completed the Form 450 inasmuch as the information was transferred by the agency, without involvement by the employee, when the recusal list was generated.  Thus the withheld material comes within the bar to disclosure contained in EGA § 107(a)(2).  The mere fact that NIH transfers this information from the Form 450 to another form – a recusal list – should not

7

dissolve the confidentiality protection enshrined in the statute.

Seife argues that the recusal lists should be disclosed because the information that they include "should not be limited to information contained in an OGE-450 form, as the form doesn't capture many circumstances where an employee must recuse himself," such as "matters involving negotiations for employment or close personal connections with individuals [that] might necessitate recusal." Seife Mem. at 11. However, the fact that NIH may have failed to identify situations necessitating recusal is not relevant to whether the agency's replication of the information in Form 450 takes the information outside the strictures of § 107(a)(2). In a similar vein, Seife notes that NIH policy requires employees to "identify[] any situation that could pose a real or apparent conflict and to discuss it with their supervisor." Id. (quoting NIH Policy Manual). Seife argues that, "[t]herefore NIH should be compiling recusal lists through discussions, not deriving them from OGE-450s." Id. Again, that NIH may have produced recusal lists by following procedures plaintiff alleges to be improper does not change the character of the information at issue in this case.

Seife further finds fault in the fact that the agency concedes that Exemption 3 does not bar the release of the withheld material on the waiver determinations but simultaneously insists that Exemption 3 bars release of the identical material from the recusal lists. Seife Reply at 6. But the waiver determinations are the subject of a separate statute, 18 U.S.C. § 208(d)(1), which removes the confidentiality protection of EGA § 107(a)(2) for such determinations, as will be discussed further below. In any event, NIH's position does not alter the plain wording of § 107(a)(2).[2]

_____

[2] Seife argues that "much of the reasoning" he advances relating to why Exemption 3 does not bar public disclosure of waiver determinations also applies to his argument that Exemption 3 does not bar public disclosure of the recusal lists. Seife Mem. at 12. Seife's failure

B.  Exemption 3's Application to the Indicators of Which Financial Interests Belong to the Employee's Spouse and Dependent Children on the Waiver Determinations

Ordinarily an employee of a federal agency may not "participate[] personally and substantially" in any decision-making, advisory, or investigatory capacity in any proceeding before the agency "in which, to his knowledge, he, his spouse, [or] minor child . . . has a financial interest." 18 U.S.C. § 208(a). The statute barring such participation, however, allows for exceptions in some cases, including those cases where the agency "certifies in writing that the need for the individual's services outweighs the potential for a conflict of interest created by the financial interest involved." § 208(b)(3). The waiver determinations in this case were given pursuant to that subsection. See Cornell Decl. ¶ 11.

Section 208(d)(1) of the statute provides that a copy of any waiver determination issued

---

to specify which particular arguments he considers applicable makes it difficult for the Court to address them. Suffice it to say that we do not believe that any of them counter the reasoning described above.

Nonetheless, we note that one of his arguments results from a misreading of 5 C.F.R. § 2634.901(d). Seife argues that NIH must release in full the recusal lists because "NIH, for the purposes of convenience, chooses to collect . . . information [relating to conflicts of interest] on confidential financial disclosure reports — OGE-450 forms — rather than collecting that information anew" whenever NIH seeks to determine which employees must be disqualified from participating in which matters. Seife Mem. at 9. Seife then points to the following language from the regulation: "If an agency statute requires the public reporting of certain information and, for purposes of convenience, an agency chooses to collect that information on the confidential report form filed under this subpart, only the special statutory information may be released to the public, pursuant to the terms of the statute under which it was collected." Seife goes on to argue that NIH's obtaining of information from the Form 450 was done "for the purposes of convenience" and that therefore "all the financial information in [the recusal lists] may be released to the public." Seife Mem. at 9. The regulation, however, concerns situations in which an agency is required to publicly report certain information but instead collects that information on the confidential report form. All the regulation says is that in such a situation the agency must disclose the information required to be reported publicly, even if it happens to be contained on the confidential form. Here, of course, NIH has not sought to shield information from the public by adding it to the Form 450. Rather, it has transferred confidential information from the Form 450 to another document.

9

pursuant to § 208(b)(3) "shall be made available to the public." It permits the agency to

withhold the waiver determination, however, if such withholding would be permitted by FOIA.

See § 208(d)(1). The waiver determinations at issue in this case contain information obtained

from the confidential OGE Form 450 that indicates which financial interests belong to the

spouse or dependent child of the employee. Cornell Decl. ¶ 24. NIH redacted the information

relating to spouses and dependent children pursuant to FOIA Exemption 3. Id. ¶ 13.

   The statute governing waiver determinations specifically provides that a waiver

determination issued under § 208(b)(3) must not contain financial information that is "more

extensive" than that required under the individual's financial disclosure report. See 18 U.S.C.

§ 208(d)(1). Here, Form 450 permits, but does not require, an employee to designate with letter

labels which financial interests belong to his spouse or dependent children, as opposed to the

filer alone. See Sample Form 450 at 3 ("You may distinguish any entry for a family member by

preceding it with S for spouse, DC for dependent child, or J for jointly held.") (emphasis added).

These letter indicators were transferred to the waiver determination forms. Thus, the waiver

determinations contained information that was "more extensive" than what the SGEs were

required to include on the Form 450. While the Court finds the statutory language to be rather

opaque, both the Government and Seife agree that the statute should be read as permitting an

agency to withhold under FOIA Exemption 3 any information that is not required to be disclosed

on the Form 450. See Seife Mem. at 9, 14; Seife Reply at 4; Gov. Mem. at 17–18. Moreover,

the governing regulation makes this absolutely clear. See 5 C.F.R. § 2640.304(b)(2) ("In making

a waiver issued pursuant to 18 U.S.C. 208 (b)(1) or (b)(3) publicly available, an agency . . . .

[s]hall withhold from public disclosure information in a waiver issued pursuant to 18 U.S.C.

208(b)(3) concerning an individual's financial interest which is more extensive than that

10

required to be disclosed by the individual in his financial disclosure report under the Ethics in

Government Act of 1978 . . . ."). Seife argues that the labels are not in fact merely permissive

because "all instructional examples on the OGE 450 include these labels." Seife Reply at 4; see

also Sample OGE Form 450 at 7. But the mere fact that a sample form shows how to include the

labels does not change the fact that their inclusion is not mandatory.

   This ruling, of course, applies only to the letter designations reflecting whether a

financial interest on a waiver determination is that of a spouse or dependent child. It does not

apply to the listing of the financial interest itself, whether or not it is held solely by the spouse or

dependent child.

   C.  Exemption 6's Application to the Financial and Relationship Information
     Contained in the Waiver Determinations.

   The Government has not relied on FOIA Exemption 3 to withhold the financial interests

and relationship information from the waiver determinations. Instead, it relies on Exemption 6.

An agency may withhold records pursuant to Exemption 6 if the records constitute "personnel

and medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy." 5 U.S.C. § 552(b)(6). Determining whether Exemption 6 permits

an agency to withhold information involves a three-step analysis. See Associated Press, 554

F.3d at 291–93. First, a court must determine whether the records sought amount to "personnel

and medical files and similar files." See id. at 291. Second, a court must determine whether the

privacy interest implicated by disclosure is "measurable" or "more than de minimis." Id. at 285,

291–92 (citations omitted). Third, if disclosure would implicate a measurable privacy interest,

the Court must determine whether the invasion of personal privacy outweighs the public's

interest in disclosure. See id. at 293; Wood v. FBI, 432 F.3d 78, 87 (2d Cir. 2005). Here, the

parties do not dispute that the conflicts waivers constitute "personnel and medical files and similar files." Therefore, our analysis begins at the second step.

                    1.      The Privacy Interest at Stake

    The privacy interests protected by the exemptions to FOIA are broadly construed. See Reporters Comm., 489 U.S. at 763. These interests embody the right of individuals "to determine for themselves when, how, and to what extent information about them is communicated to others." Johnson v. Bryco Arms, 224 F.R.D. 536, 541 (E.D.N.Y. 2004) (citation omitted); accord Reporters Comm., 489 U.S. at 763 (Personal "privacy encompass[es] the individual's control of information concerning his or her person."). Thus, privacy interests under FOIA Exemption 6 "include 'the individual interest in avoiding disclosure of personal matters.'" Associated Press, 554 F.3d at 284 (quoting Reporters Comm., 489 U.S. at 762).

    The information NIH redacted from the waiver determinations essentially consists of a three-column listing of one or more entries for each employee.[3] The first column is labeled "Organization." The second column is labeled "Kind of Organization" and the last column is labeled "Nature of Interest." The vast majority of "nature of interest" listings are for "stock." The waiver determinations do not reflect the amount or value of stock or the amount of any salary or wages paid by an entity. Examples of the kinds of organizations listed include "health care supplier," "pharmaceutical company," and "health care company" among others. Thus, the listings appear in the following format:

---

    [3] The Court is able to describe this information because it ordered the Government to produce to the Court, ex parte, unredacted copies of the waiver determinations Seife seeks.

| Organization | Kind of Organization | Nature of Interest |
|---|---|---|
| XYZ Corporation | Biotechnology Company | Stock |
| John Doe Company | Professional Alliance | Consultant |
| ABC Foundation | Not for Profit Private Foundation | Board of Directors |

NIH states that where relationships are at issue, the time period to which a listing relates is the preceding year.  Cornell Decl. ¶ 23.

  Case law has recognized that individuals have a substantial privacy interest in information describing their personal financial interests.  See Hopkins v. U.S. Dep't of Housing & Urban Dev., 929 F.2d 81, 87 (2d Cir. 1991) (finding "significant privacy interest" in avoiding disclosure of information regarding "job classification, hourly rate of pay, number of hours worked during the reporting period, wages and fringe benefits paid, and deductions made"); Consumers' Checkbook, Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs., 554 F.3d 1046, 1050 (D.C. Cir. 2009), cert. denied, 130 S. Ct. 2140 (2010) ("[A]n individual has a substantial privacy interest under FOIA in his financial information, including income."). Additionally, individuals have a greater than de minimis privacy interest in their employment histories and other business relationships.  See Stern v. F.B.I., 737 F.2d 84, 91 (D.C. Cir. 1984) ("We begin with the recognition that an employee has at least a minimal privacy interest in his or her employment history and job performance evaluations.") (citing cases); Triestman v. U.S. Dep't of Justice, 878 F. Supp. 667, 669 (S.D.N.Y. 1995) ("[Persons] have privacy interests [under FOIA] in their employment histories . . . .") (citing case); Lytle v. JPMorgan Chase, 810 F. Supp. 2d 616, 631 (S.D.N.Y. 2011) ("[Plaintiff's] employment and education history may arguably be traditionally considered private rather than public.") (citing cases); Chang v. Dep't of the Navy, 314 F. Supp. 2d 35, 43 (D.D.C. 2004) ("An individual does have a privacy interest in keeping employment history, job performance evaluations and information as to disciplinary

13

proceedings confidential.") (citing cases); Kassel v. U.S. Veterans' Admin., 709 F. Supp. 1194,

1199 (D.N.H. 1989) ("Employees have a privacy interest in their employment history.  That

interest is especially strong when free speech issues are implicated.") (citations omitted).

Because the SGEs have a measurable privacy interest in information regarding their

finances and business relationships, the Court must balance the weight of their privacy interests

in this information against the strength of the public's interest in accessing that information.

2.   Balancing of the Public's Interest in Access to the Withheld Information
Against the Employees' Privacy Interests

The next question we confront is whether "the public interest would be served by the

disclosure of the" redacted information, "and, if so, whether that interest outweighs the

[employees'] privacy interest in nondisclosure." Associated Press, 554 F.3d at 289.  "[T]he only

relevant public interest in disclosure to be weighed in this balance is the extent to which

disclosure would serve the core purpose of the FOIA, which is contributing significantly to

public understanding of the operations or activities of the government." U.S. Dep't of Defense

v. Fed. Labor Relations Auth., 510 U.S. 487, 495 (1994) (internal punctuation and citation

omitted) (emphasis in original).  "The basic purpose of FOIA is to ensure an informed citizenry,

vital to the functioning of a democratic society, needed to check against corruption and to hold

the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146,

152 (1989) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)).  "Release

of information turns therefore on the nature of the document and its relationship to FOIA's

purpose of exposing agency action to public scrutiny." Fed. Labor Relations Auth. v. U.S. Dep't

of Veterans Affairs, 958 F.2d 503, 510 (2d Cir. 1992) (citing Reporters Comm., 489 U.S. at

772).

14

The Second Circuit has held:

> In balancing a government employee's privacy interests against the public's interest in disclosure, a court should consider several factors, including: (1) the government employee's rank; (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways to obtain the information; (4) whether the information sought sheds light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature.

Perlman v. U.S. Dep't of Justice, 312 F.3d 100, 107 (2d Cir. 2002), vacated, 541 U.S. 970,

reinstated on remand, 380 F.3d 110 (2d Cir. 2004).  "The factors are not all inclusive, and no one

factor is dispositive."  Id.  Although these factors were articulated largely in the context of

Perlman's conducting the balancing required under FOIA's Exemption 7(C), 5 U.S.C.

§ 552(b)(7)(C), Exemption 7(C) is worded similarly to Exemption 6.  Accordingly, we will

consider the factors in the Exemption 6 context, as have other courts, including the Second

Circuit.  See, e.g., Tomscha v. Gen. Servs. Admin., 158 F. App'x 329, 331 (2d Cir. 2005); Long

v. Office of Pers. Mgmt., 2007 WL 2903924, at *18 (N.D.N.Y. Sept. 30, 2007); Cowdery, Ecker

& Murphy, LLC v. U.S. Dep't of the Interior, 511 F. Supp. 2d 215, 218 (D. Conn. 2007).

     Neither party has provided information to the Court on the compensation of the SGEs,

but the record reflects that on average they work up to 20 days per year, Tabak Decl. ¶ 8,[4] and it

is obvious that as temporary employees without final decisionmaking power, their position

cannot be considered to have a high "rank."  Nonetheless, we believe this factor is best

considered in conjunction with the fourth factor – that is, whether the information sought about

the employee sheds light on a government activity.  In typical FOIA cases, a low-level employee

is likely to have little influence on government policy and thus such an employee's personal

---

    [4] The Government states only that the average number of days served is "fewer" than 20 days. Id.

information will shed little or no light on government activity.  Here, however, Congress itself

recognizes that NIH's advisory committees are "essential" to the agency's operations, 5 U.S.C.

App'x 2 § 2(b)(2), and each member who received a waiver determination has been found to

have a critical role within each committee, see, e.g., Conflict of Interest Waiver for Dr. Louis

Ptacek, dated Sept. 15, 2008 (annexed as Ex. B to Seife Mem.) at 3 ("[Dr. Ptacek's] expertise in

human genetics will be invaluable in Council deliberations."); Conflict of Interest Waiver for Dr.

Charis Eng, dated Aug. 21, 2007 (annexed as Ex. B to Seife Mem.) at 2 ("Dr. Eng's expertise in

the areas of genomic medicine and cancer genetics will be vital to the committee.").  The

committees provide advice to the directors and deputy directors of various NIH divisions on

significant matters, such as science policy, grant applications, and the efficacy of NIH

operations.  See Tabak Decl. ¶ 5.  The particular information withheld here – the SGEs' financial

information – sheds light on an important issue: namely, the neutrality of the participants and the

integrity of the advisory committee review process.  Case law is replete with instances where

access to information about bias has been found to be a weighty interest.  See, e.g., Washington

Post Co. v. U.S. Dep't of Health & Human Servs., 690 F.2d 252, 264 (D.C. Cir. 1982) ("[T]he

public has a singularly strong interest in disclosure of consultants' conflicts of interest."); Nat'l

Right to Work Legal Def. & Educ. Found., Inc. v. U.S. Dep't of Labor, 2011 WL 6148661

(D.D.C. Dec. 12, 2011) (referring to "legitimate public interest in ferreting out 'undue influence'

on the government by outside groups"); cf. Fed. Election Comm'n v. Nat'l Conservative

Political Action Comm., 470 U.S. 480, 496–97 (1985) ("[P]reventing corruption or the

appearance of corruption are . . . legitimate and compelling government interests . . . ."); Elec.

Frontier Found. v. Office of the Director of Nat'l Intelligence, 639 F.3d 876, 887 (9th Cir. 2010)

("There is a clear public interest in public knowledge of the methods through which well-

16

connected corporate lobbyists wield their influence."). Seife has pointed to various news articles and governmental investigations regarding ethical issues at NIH. See Seife Reply at 13. Seife's request for information disclosing the employees' potential conflicts of interest would shed direct light onto the financial interests that may have influenced their work for NIH advisory committees.

With respect to the question of the "degree of wrongdoing alleged and the strength of the evidence against the employee," there is no particular evidence as to any of the employees at issue and thus this factor does not weigh in favor of disclosure. See, e.g., Long, 2007 WL 2903924, at *18 (factor weighs against disclosure where there is "no actual evidence of wrongdoing" by the particular employees for whom information was sought). Of course, in making this determination, we must not lose sight of the fact that part of the value of the information withheld is precisely to determine whether wrongdoing has occurred.

As for the third factor, the Government does not suggest that there exists any alternative means to obtain the financial information. Indeed, the information was derived directly from the OGE Form 450, which the parties agree is confidential.

The last Perlman factor instructs us to consider whether the information sought relates to the employee's performance of his job duties or is of a personal nature. While the withheld information would allow the public to draw inferences as to the employees' job performances (specifically, whether the employee in fact participated in a matter in which he had a conflict of interest), the information itself is personal in nature. This factor therefore weighs against disclosure of the redacted information. Nevertheless, the fact that the personal information sought relates to individuals who served as government employees "somewhat diminishe[s]" the

17

weight of their privacy interests.  Perlman, 312 F.3d at 107 (quoting Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998)).

The Government makes other arguments that do not fit neatly into the Perlman factors but that we nonetheless deem relevant to the balancing required by Exemption 6.  To start, the Government argues that the financial information is of limited value "because the waiver determinations alone alert the public of a potential conflict," and thus "disclosure of the withheld information would reveal very little about the operations or activities of NIH" particularly since "the redacted waiver determinations produced to plaintiff explain why NIH decided to grant or deny the waiver requests."  Gov. Mem. at 22.  But while the redacted waivers alert the public to the fact that certain NIH advisory committee members have participated in matters in which they have a financial interest, they do not allow the public to make judgments about whether the waivers should have been granted based on the particular conflicts disclosed.

NIH argues that the employees here have an acute interest in maintaining the privacy of the information regarding their financial interests and business and personal relationships because revealing such information "could reasonably be expected to cause potential harassment or misuse of the information, particularly since a release of this personal information to plaintiff is akin to a release to the world."  Gov. Mem. at 20 (citing Cornell Decl. ¶ 35).  In light of the fact that the financial information does not include the value of any holdings and consists only of interests related specifically to the medical field that is the subject of the waiver determination, it is difficult to imagine how the publicizing of such information could result in harassment or misuse.  Nor does the Government elaborate on this question.  Thus, the Government has failed to make "any particularized showing that disclosure of [the withheld] information is likely to lead to retaliation, harassment, or embarrassment," Associated Press v. U.S. Dep't of Defense,

18

462 F. Supp. 2d 573, 577 (S.D.N.Y. 2006), and we accordingly give this argument little weight in our analysis.

The Government also observes that the NIH employees had a "reasonable expectation that the information contained in [the OGE Form 450] would not be disclosed to the public" because "the Ethics in Government Act prohibits the disclosure of any information in confidential financial disclosure reports." Gov. Mem. at 21. The Government makes this argument despite the fact that it has explicitly conceded that Congress, when it enacted 18 U.S.C. 208(d)(1), eliminated the promise of confidentiality contained in EGA § 107(a)(2) with respect to financial information contained in waiver determinations. See Gov. Supp. Mem. at 8. In light of the Government's position, the SGEs could have had no reasonable expectation that the confidentiality of the financial information in the waiver determinations would be preserved. Instead, this information was merely subject to whatever withholding an agency would be permitted to make under FOIA.[5]

In some instances, a government pledge to maintain the confidentiality of information is a factor that weighs against disclosure under Exemption 6, although such an assurance is not necessarily dispositive. See U.S. Dep't of State v. Ray, 502 U.S. 164, 177 (1991); Washington Post, 690 F.2d at 263. But the instructions on the Form 450 itself list nine separate instances under which the information it contains might be disclosed to persons outside of NIH. See

_____

[5] Given the Government's concession that § 208(d)(1) eliminated the protection of EGA § 107(a)(2), the Court finds inexplicable the Government's contention, made in passing in its final brief, that Congress "allow[ed] SGE advisory committee members to disclose [financial] information confidentially" and thus "carefully weighed the competing factors of privacy versus conflict prevention" to bar disclosure now. Gov. Supp. Mem. at 12 (citations and internal quotation marks omitted). But, as the Government concedes, Congress made no such weighing at all. Instead, it instructed, by virtue of its reference to FOIA, including FOIA's Exemption 6, in § 208(d)(1) that the other branches of Government – the agency and the courts – would conduct any "weighing."

Sample Form 450 at 1. While a FOIA request for waiver determinations is not among them, the mere fact that the employees were never informed by NIH of the applicability of FOIA to the waiver requests cannot vitiate the disclosure requirements of FOIA. Cf. Robles v. Envtl. Prot. Agency, 484 F.2d 843, 846 (4th Cir. 1973) ("[A] promise of confidentiality . . . is not enough to defeat the [public's] right of disclosure . . . . Undertakings of that nature cannot, in and of themselves, override [FOIA]."). More significantly, NIH neither points to an affirmative pledge of confidentiality with respect to the waiver determinations nor provides evidence from a single SGE as to what his or her own understanding was on this point.

On the issue of the strength of the privacy interest, Seife notes that medical journals routinely require contributors to disclose financial interests, that medical journals may publish this information, and that pharmaceutical companies often disclose payments to physicians. See Seife Mem. at 17–20; Seife Reply at 10–11. The Government does nothing to counter these factual contentions other than to argue that no "waiver" has occurred. Gov. Mem. at 6–7. But the point is not that the employees have "waived" their privacy, but rather that information relating to medical workers' financial interests in the medical field are often not in fact kept confidential.

In its initial brief, see Gov. Mem. at 22, the Government cites to a concurring opinion in the case of Meyerhoff v. United States Environmental Protection Agency, 958 F.2d 1498 (9th Cir. 1992), which conducted an Exemption 6 analysis and pointed to the fact that disclosure of financial/business information might serve as a deterrent to individuals to serve on advisory panels, see id. at 1504 (Kozinski, J., concurring) (publicly disclosing information contained in conflict of interest forms "may deter qualified individuals from serving on these panels"). In its supplemental briefing, NIH supplied a declaration from the Principal Deputy Director of NIH

stating that, because individuals have "expressed concerns" about disclosing financial information – or have been unwilling to serve at all as a result – he "think[s] it is likely that individuals may be deterred from serving as SGE advisory committee members" if the information were disclosed.  Tabak Decl. ¶ 18.  Assuming <u>arguendo</u> that the Court could properly take external consequences into account as part of the Exemption 6 balancing analysis – an analysis not obviously authorized by the statutory language –  the Deputy Director's affidavit does not carry great weight.  This is because the affidavit addresses the deterrent effect of releasing the more expansive information required in the Form 450 (which requires a listing of all assets and interests), rather than addressing the deterrent effect of disclosing the limited information contained in a waiver determination (consisting only of the specific interest that relates to the subject of the waiver determination).

As Seife points out, the relevant facts of the <u>Washington Post</u> case are almost identical to those here: <u>Washington Post</u> involved (1) a request for financial information of scientific consultants employed by the National Cancer Institute and (2) a public interest identified by the plaintiff as the interest in determining whether the consultants had conflicts of interest.  The District of Columbia Circuit concluded that "when the strong interest in disclosure of potential abuses of official position is balanced against the consultants' relatively slight privacy interest in the limited information required by [the financial disclosure form], we have no trouble concluding that disclosure is not 'clearly unwarranted'" under Exemption 6.  690 F.2d at 265.  The Government does not argue that <u>Washington Post</u> was wrongly decided.  Instead, in a footnote the Government endeavors to distinguish the case on the ground that the employees there "did not have an expectation that [financial] information . . . would be kept confidential."  Gov. Mem. at 20 n.11.  But, as already noted, there has been little showing that the employees

here had such an expectation with respect to the waiver determinations, and, to the extent they did, such an expectation would not have been reasonable in light of Congress's explicit directive that such determinations "shall be made available to the public."  See 18 U.S.C. § 208(d)(1). The Washington Post case thus is not materially distinguishable from the instant case and supports the conclusion that the information Seife seeks here must be released.

      After considering the Perlman factors and the parties' arguments, the Court concludes that the employees' interests in keeping their personal financial information private, while significant, are outweighed by the public's interest in detecting undue influence on the functioning of government.  The information Seife requests serves the core purpose of FOIA.  It sheds direct light on the nature of external influences on certain NIH employees, and it is necessary for the public to independently evaluate the propriety of both the grants of the waivers and of the work conducted by the NIH committees.

IV.    CONCLUSION

      For the foregoing reasons, the plaintiff's motion for summary judgment (Docket # 12) is granted in part and denied in part. Defendants' motion for summary judgment (Docket # 20) is also granted in part and denied in part.  The Government must produce to Seife copies of the requested waiver determinations without redaction of the information regarding the SGEs' financial interests and relationships.  The Government may redact from these forms the letter labels that indicate which financial interests belong in whole or in part to the spouse or dependent child of the SGE.  The Government need not produce unredacted versions of the recusal lists.[6]

---

[6] Seife seeks his costs incurred in litigating this action. Seife Mem. at 25.  Under FOIA, a court has discretion to award litigation costs reasonably incurred by a plaintiff who has substantially prevailed in a FOIA action. 5 U.S.C. § 552(a)(4)(E)(i).  If Seife wishes to pursue

The Clerk is requested to enter judgment.

Dated: June 11, 2012
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Charles Seife
20 Cooper Sq. # 628
New York, NY 10003

Alicia Marie Simmons
U.S. Attorney Office SDNY
86 Chambers Street
New York, NY 10007

---

certain criteria set forth in case law. See, e.g., Pietrangelo v. U.S. Army, 568 F.3d 341, 343 (2d Cir. 2009).